1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

*Promissory Note 10-20-10*

**THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE, AND IS BEING OFFERED AND SOLD PURSUANT TO AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH LAWS. THIS SECURITY MAY NOT BE SOLD OR TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OR SUCH OTHER LAWS.**

**CONVERTIBLE NOTE**
**(Non-Revolving Line of Credit)**

**Borrower:** JL Powell LLC, a Delaware limited liability company.
**Borrower Address:** 16860 Three Oaks Road, Three Oaks, Michigan 49128.
**Closing Date:** October 20, 2010
**Maturity Date:** October 20, 2013
**Principal Amount:** $500,000

     FOR VALUE RECEIVED, **JL POWELL LLC**, a Delaware limited liability company (hereinafter the "**Borrower**"), promises to pay to the order of BLUE HIGHWAYS HOLDINGS III, LLC, a Delaware limited liability company, its successors or assigns (hereinafter the "**Lender**") at 1111 Mission Ridge Road, Santa Barbara, CA 93103, or such other place as Lender may from time to time designate in writing, the principal sum of FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($500,000) or the aggregate unpaid principal amount of all advances made by Lender to Borrower pursuant to the terms of the Loan and Security Agreement of even date herewith between the Borrower and Lender (the "**Loan Agreement**") plus interest on the unpaid principal balance at the variable rate equal to three hundred (300) basis points over the Base Rate (the "**Note Rate**"). Interest shall be calculated on the principal balance, which from time to time is outstanding, on the basis of a three hundred sixty (360) day year, based on the actual number of days elapsed in each month.

     On October 20, 2013 (the "**Maturity Date**"), all outstanding and unpaid principal, all accrued and unpaid interest thereon and other charges or fees relating to this Note or the Loan Agreement which are then due and owing from Borrower to Lender shall be immediately due and payable.

     Subject to the terms and conditions of this Note, Lender shall advance funds to Borrower pursuant to the terms of such Loan Agreement up to a maximum principal sum equal to the face amount of this Note.

# ARTICLE 1

# DEFINITIONS

SECTION 1.1  Definitions . The terms defined in this Article whenever used in this Note have the following respective meanings:

(i)  **"Affiliate"** has the meaning ascribed to such term in Rule 12b-2 under the Securities Exchange Act of 1934, as amended.

(ii)  **"Bankruptcy Code"** means the United States Bankruptcy Code of 1986, as amended (11 U.S.C. §§ 101 et . seq .).

(iii)  **"Base Rate"** means, on any date, a variable rate per annum equal to the rate of interest most recently published by The Wall Street Journal as the "prime rate" at large U.S. money center banks.

(iv)  **"Business Day"** means a day other than Saturday, Sunday or any day on which banks located in the State of Michigan are authorized or obligated to close.

(v)  **"Class A Units"** means Class A Units of the Borrower.

(vi)  **"Class A Units Issued at Conversion"**, when used with reference to the securities deliverable upon conversion of this Note, means all Class A Units now or hereafter Outstanding and securities of any other class or series into which this Note hereafter shall have been changed or substituted, whether now or hereafter created and however designated.

(vii)  **"Closing Date"** means the closing date set forth in the first paragraph of this Note.

(viii)  **"Conversion"** or **"conversion"** means the repayment by the Borrower of the Principal Amount of this Note and the Interest Amount thereon by the delivery of Class A Units on the terms provided in Section 3.2, and **"convert," "converted," "convertible"** and like words shall have a corresponding meaning.

(ix)  **"Conversion Date"** means any day on which all or any portion of the Principal Amount of this Note and the Interest Amount thereon is converted in accordance with the provisions hereof.

(x)  **"Conversion Notice"** means a written notice of conversion substantially in the form annexed hereto as Exhibit A .

(xi)  **"Conversion Price"** means, as of any date of determination, a price per Class A Unit equal to $4.38 (i.e., the initial closing date valuation of the Borrower).

(xii)  **"Event of Default"** has the meaning set forth in Section 6.1.

2

(xiii) **"Maturity Date"** means the maturity date set forth in the 1st paragraph of this Note.

(xiv) **"Maximum Rate"** has the meaning set forth in Section 6.4

(xv) **"Note"** or **"Notes"** means this Convertible Note of the Borrower or such other convertible Note(s) exchanged therefor as provided in Section 2.1.

(xvi) **"Note Rate"** means three hundred (300) basis points over the Base Rate.

(xvii) **"Outstanding"** when used with reference to Class A Units means, on any date of determination, all issued and outstanding Class A Units.

(xviii) **"Person"** means an individual, a corporation, a partnership, an association, a limited liability company, an unincorporated business organization, a trust or other entity or organization, and any government or political subdivision or any agency or instrumentality thereof.

(xix) **"Principal Amount"** means, for any date of calculation, the principal sum set forth in the first paragraph of this Note (but only such principal amount as to which the Lender has (a) actually advanced to Borrower pursuant to the Loan Agreement, and (b) not theretofore furnished a Conversion Notice in compliance with Section 3.2).

(xx) **"SEC"** means the United States Securities and Exchange Commission.

(xxi) **"Securities Act"** means the Securities Act of 1933, as amended, and the rules and regulations of the SEC thereunder, all as in effect at the time.

(xxii) **"Units"** means the Class A Units and any other units of any other class or series of limited liability company interests in the Borrower, whether now or hereafter authorized and however designated, which have the right to participate in the distribution of earnings and assets (upon dissolution, liquidation or winding-up) of the Borrower.

All references to "cash" or "$" herein mean currency of the United States of America.

## ARTICLE 2

## EXCHANGES, TRANSFER AND REPAYMENT

SECTION 2.1    Registration of Transfer of the Note. This Note, when presented for registration of transfer, shall (if so required by the Borrower) be duly endorsed, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Borrower duly executed, by the Lender duly authorized in writing.

SECTION 2.2    Loss, Theft, Destruction of Note. Upon receipt of evidence satisfactory to the Borrower of the loss, theft, destruction or mutilation of this Note and, in the case

3

of any such loss, theft or destruction, upon receipt of indemnity or security reasonably satisfactory to the Borrower, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Borrower shall make, issue and deliver, in lieu of such lost, stolen, destroyed or mutilated Note, a new Note of like tenor and unpaid Principal Amount dated as of the date hereof (which shall accrue interest from the most recent Interest Payment Due Date on which an interest payment was made in full). This Note shall be held and owned upon the express condition that the provisions of this Section 2.2 are exclusive with respect to the replacement of a mutilated, destroyed, lost or stolen Note and shall preclude any and all other rights and remedies notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement of negotiable instruments or other securities without the surrender thereof.

SECTION 2.3  Who Deemed Absolute Owner . The Borrower may deem the Person in whose name this Note shall be registered upon the registry books of the Borrower to be, and may treat it as, the absolute owner of this Note (whether or not this Note shall be overdue) for the purpose of receiving payment of or on account of the Principal Amount of this Note, for the conversion of this Note and for all other purposes, and the Borrower shall not be affected by any notice to the contrary.  All such payments and such conversions shall be valid and effectual to satisfy and discharge the liability upon this Note to the extent of the sum or sums so paid or the conversion or conversions so made.

SECTION 2.4  Repayment; Prepayment.

(i)  No amount withdrawn under this Note shall be payable to Lender prior to March 31, 2011 (the "**Draw Term End Date**"), without the Lender's prior written consent.

(ii)  Commencing on the Draw Term End Date and continuing each three (3)-month period thereafter, Borrower shall make payments on the last business day of each 3-month period for so long as there is an outstanding balance on this Note of all principal and accrued but unpaid interest on the unpaid principal amount at the Note Rate (the "**Interest Amount**") in an amount equal to the greater of (A) the sum of the unpaid Principal Amount and the Interest Amount, divided by the number of 3-month periods remaining prior to the Maturity Date and (B) the amount of distributable cash as determined by the board of directors of the Borrower available for payments on this Note, taking into account the Borrower's projected cash needs over the period of twelve months immediately following the applicable payment date.

(iii)  On the Maturity Date, all outstanding and unpaid principal, all accrued and unpaid interest thereon and other charges or fees relating to this Note or the Loan Agreement which are then due and owing from Borrower to Lender shall be immediately due and payable.

(iv)  Borrower may not prepay on or prior to September 1, 2011 in cash any principal amount due under this Note, without the Lender's prior written consent. Thereafter, Borrower is permitted to prepay in cash any principal amount due with 10 days' prior notice.

(v)  Any payments received by the Lender on account of this Note shall be applied first, to any costs, expenses or charges relating to this Note or the Loan Agreement then owed to the Lender by the Borrower; second, to accrued and unpaid interest; and third, to the unpaid principal balance thereof. Notwithstanding the foregoing, any payments received after the occurrence and

during the continuance of an Event of Default and/or demand for payment shall be applied in such manner as the Lender may determine in its sole discretion.

SECTION 2.5   Extension. Thereafter, annual extensions to the Maturity Date shall be available to the Borrower upon Lender's sole discretion, provided: (i) no Event of Default (as such term is defined herein and in the Loan Agreement) exists under the Loan and there exists no fact or circumstance that with notice, the lapse of time or both would constitute an Event of Default under the Loan, (ii) Borrower requests same in writing at least thirty (30) days prior to the then-existing Maturity Date, and (iii) in Lender's sole determination, no material adverse change has occurred in the Borrower or the collateral for the Loan.

## ARTICLE 3

## CONVERSION OF NOTE

SECTION 3.1   Conversion; Conversion Price.

At the option of the Lender, this Note may be converted, either in whole or in part, up to the full unpaid Principal Amount hereof and accrued and unpaid interest hereon into Class A Units, at any time and from time to time on any Business Day on or prior to September 1, 2011, subject to compliance with Section 3.2. The number of Class A Units into which this Note may be converted is equal to the dollar amount of the Note being converted divided by the Conversion Price.

SECTION 3.2   Exercise of Conversion Privilege.

(a)   Conversion of this Note may be exercised on any Business Day on or prior to September 1, 2011 by the Lender by telecopying an executed and completed Conversion Notice to the Borrower. Each date on which a Conversion Notice is telecopied to the Borrower in accordance with the provisions of this Section 3.2 shall constitute a Conversion Date. The Borrower shall convert this Note and issue the Class A Units Issued at Conversion in the manner provided below in this Section 3.2, and all voting and other rights associated with the beneficial ownership of the Class A Units Issued at Conversion shall vest with the Lender, effective as of the Conversion Date at the time specified in the Conversion Notice. The Conversion Notice also shall state the name or names (with addresses) of the persons who are to become the holders of the Class A Units Issued at Conversion in connection with such conversion. As promptly as practicable after the receipt of the Conversion Notice as aforesaid, but in any event not more than five (5) Business Days after the Borrower's receipt of such Conversion Notice, the Borrower shall (i) issue the Class A Units Issued at Conversion in accordance with the provisions of this Article 3 and (ii) cause to be mailed for delivery by overnight courier a certificate or certificate(s) representing the number of Class A Units to which the Lender is entitled by virtue of such conversion. Such conversion shall be deemed to have been effected at the time at which the Conversion Notice indicates, and at such time the rights of the Lender of this Note, as such (except if and to the extent that any Principal Amount thereof or Interest Amount thereon remains unconverted), shall cease and the Person and Persons in whose name or names the Class A Units Issued at Conversion shall be issuable shall be deemed to have become the holder or holders of record of the Class A Units represented thereby, and all voting and other rights associated with the beneficial ownership of such Class A Units shall at such time vest with such Person or Persons. The Conversion Notice shall constitute a contract between the Lender and the Borrower, whereby the Lender shall be deemed to subscribe for the number of Class

A Units which it will be entitled to receive upon such conversion and, in payment and satisfaction of such subscription, to surrender this Note and to release the Borrower from all liability thereon (except if and to the extent that any Principal Amount thereof or Interest Amount thereon remains unconverted).

(b) The Lender shall be entitled to exercise its conversion privilege notwithstanding the commencement of any case under the Bankruptcy Code. In the event the Borrower is a debtor under the Bankruptcy Code, the Borrower hereby waives to the fullest extent permitted any rights to relief it may have under 11 U.S.C. § 362 in respect of the Lender's conversion privilege. The Borrower hereby waives to the fullest extent permitted any rights to relief it may have under 11 U.S.C. § 362 in respect of the conversion of this Note. The Borrower agrees, without cost or expense to the Lender, to take or consent to any and all action necessary to effectuate relief under 11 U.S.C. § 362.

SECTION 3.3 Payment on a Liquidity Event. The Conversion Price and the number of units deliverable upon conversion of this Note are subject to payment or adjustment from time to time as follows:

(i) Reclassification, Fundamental Corporate Change. In case the Borrower shall reorganize its capital, reclassify its capital interests, consolidate or merge with or into another Person (where the Borrower is not the survivor or where there is a change in or distribution with respect to the Class A Units of the Borrower), sell, convey, transfer or otherwise dispose of all or substantially all its property, assets or business to another Person, or effectuate a transaction or series of related transactions in which more than fifty percent (50%) of the voting power of the Borrower is disposed of, or effectuate the closing of the Borrower's first firm commitment underwritten public offering of the Borrower's units or other equity interests registered under the Securities Act (each, a **"Fundamental Corporate Change"**) and, pursuant to the terms of such Fundamental Corporate Change, shares of common stock of the successor or acquiring corporation, or any cash, shares of stock or other securities or property of any nature whatsoever (including warrants or other subscription or purchase rights) in addition to or in lieu of common stock of the successor or acquiring corporation (**"Other Property"**) are to be received by or distributed to the holders of Class A Units of the Borrower, then the Lender as holder of this Note shall have the right thereafter to receive from the Borrower the greater of (A) the unpaid Principal Amount of this Note and the Interest Amount thereon and (B) the number of shares of common stock of the successor or acquiring corporation or of the Borrower, if it is the surviving corporation, and Other Property as is receivable upon or as a result of such Fundamental Corporate Change by a holder of the number of Class A Units into which the outstanding portion of this Note may be converted at the Conversion Price applicable immediately prior to such Fundamental Corporate Change. For purposes hereof, **"common stock of the successor or acquiring corporation"** shall include stock of such corporation of any class which is not preferred as to dividends or assets over any other class of stock of such corporation and which is not subject to prepayment and shall also include any evidences of indebtedness, shares of stock or other securities which are convertible into or exchangeable for any such stock, either immediately or upon the arrival of a specified date or the happening of a specified event and any warrants or other rights to subscribe for or purchase any such stock. The foregoing provisions shall similarly apply to successive Fundamental Corporate Changes.

(ii) Financing. In the event the Borrower consummates, prior to the Maturity Date a financing pursuant to which it raises capital (a "Financing"), then any amount, whether cash or

6

otherwise, raised pursuant to such Financing shall be used first to pay off the unpaid Principal Amount of this Note and the Interest Amount thereon.

SECTION 3.4     Surrender of Notes. Upon any redemption of this Note pursuant to Sections 3.2, or 6.2, or upon maturity pursuant to Section 2.4, the Lender shall either deliver this Note by hand to the Borrower at its principal executive offices or surrender the same to the Borrower at such address by nationally recognized overnight courier. Payment of the redemption price or the amount due on maturity specified in Section 2.4, shall be made by the Borrower to the Lender against receipt of this Note (as provided in this Section 3.4) by wire transfer of immediately available funds to such account(s) as the Lender shall specify by written notice to the Borrower. If payment of such redemption price is not made in full by the redemption date, or the amount due on maturity is not paid in full by the Maturity Date, the Lender shall again have the right to convert this Note as provided in Article 3 hereof or to declare an Event of Default.

## ARTICLE 4

## STATUS; RESTRICTIONS ON TRANSFER

SECTION 4.1     Status of Note. This Note constitutes a legal, valid and binding obligation of the Borrower, enforceable in accordance with its terms subject, as to enforceability, to general principles of equity and to principles of bankruptcy, insolvency, reorganization and other similar laws of general applicability relating to or affecting creditors' rights and remedies generally.

SECTION 4.2     Restrictions on Transfer. This Note has not been registered under the Securities Act. The Lender by accepting this Note agrees that this Note may not be assigned or otherwise transferred unless and until the Borrower has received the opinion of counsel for the Lender that this Note may be sold pursuant to an exemption from registration under the Securities Act.

## ARTICLE 5

## COVENANTS

SECTION 5.1     Conversion. The Borrower shall cause the transfer agent, not later than five (5) Business Days after the Borrower's receipt of a Conversion Notice, to issue and deliver to the Lender the requisite Class A Units Issued at Conversion.

SECTION 5.2     Notice of Default. If any one or more events occur which constitute or which, with notice, lapse of time, or both, would constitute an Event of Default, the Borrower shall forthwith give notice to the Lender, specifying the nature and status of the Event of Default or such other event(s), as the case may be.

SECTION 5.3     Payment of Obligations. So long as this Note shall be outstanding, the Borrower shall pay, extend, or discharge at or before maturity, all its respective material obligations and liabilities, including, without limitation, tax liabilities, except where the same may be contested in good faith by appropriate proceedings.

SECTION 5.4    Compliance with Laws. So long as this Note shall be outstanding, the Borrower shall comply with all applicable laws, ordinances, rules, regulations and requirements of governmental authorities, except for such noncompliance which would not have a material adverse effect on the business, properties, prospects, condition (financial or otherwise) or results of operations of the Borrower.

SECTION 5.5    Inspection of Property, Books and Records. So long as this Note shall be outstanding, the Borrower shall keep proper books of record and account in which full, true and correct entries shall be made of all material dealings and transactions in relation to its business and activities and shall permit representatives of the Lender at the Lender's expense to visit and inspect any of its respective properties, to examine and make abstracts from any of its respective books and records, not reasonably deemed confidential by the Borrower, and to discuss its respective affairs, finances and accounts with its respective officers and independent public accountants, all at such reasonable times and as often as may reasonably be desired.

SECTION 5.6    Reservation of Class A Units Issuable Upon Conversion. The Borrower shall at all times reserve and keep available out of its authorized but unissued Class A Units, solely for the purpose of effecting the conversion of this Note, such number of its Class A Units as shall from time to time be sufficient to effect the conversion of this Note; and if at any time the number of authorized but unissued Class A Units shall not be sufficient to effect the conversion of this Note, in addition to such other remedies as shall be available to the holder of this Note, the Borrower will take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued Class A Units to such number of Class A Units as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite approval of the board of directors to such increase.

## ARTICLE 6

## EVENTS OF DEFAULT; REMEDIES

SECTION 6.1    Events of Default. **"Event of Default"** wherever used herein means any one of the following events:

(i)    the Borrower shall default in the payment of principal of or interest on this Note as and when the same shall be due and payable and, in the case of an interest payment default, such default shall continue for five (5) Business Days after the date such interest payment was due, or the Borrower shall fail to perform or observe any other covenant, agreement, term, provision, undertaking or commitment under this Note or the Loan Agreement and such default shall continue for a period of ten (10) Business Days after the delivery to the Borrower of written notice that the Borrower is in default hereunder or thereunder;

(ii)    any of the representations, warranties, or covenants made by the Borrower herein, in the Loan Agreement or in any certificate or financial or other written statements heretofore or hereafter furnished by or on behalf of the Borrower in connection with the execution and delivery of this Note or the Loan Agreement shall be false or misleading in a material respect on the Closing Date;

8

SECTION 6.2	Acceleration of Maturity; Rescission and Annulment. If an Event of Default occurs and is continuing, then and in every such case the Lender may, in Lender's sole and absolute discretion, by a notice in writing to the Borrower, rescind any outstanding Conversion Notice and declare that any or all amounts owing or otherwise outstanding under this Note are immediately due and payable and upon any such declaration this Note or such portion thereof, as applicable, shall become immediately due and payable in cash, together with all accrued and unpaid interest thereon to the date of payment.

SECTION 6.3	Late Payment Penalty. If any portion of the principal of or interest on this Note shall not be paid within five (5) days of when it is due Lender may assess a late charge in the amount of five percent (5%) of the unpaid amount of the payment, or the maximum permitted by applicable law, whichever is less.

SECTION 6.4	Maximum Interest Rate. Notwithstanding anything herein to the contrary, if at any time the applicable interest rate as provided for herein shall exceed the maximum lawful rate which may be contracted for, charged, taken or received by the Lender in accordance with any applicable law (the **"Maximum Rate"**), the rate of interest applicable to this Note shall be limited to the Maximum Rate. To the greatest extent permitted under applicable law, the Borrower hereby waives and agrees not to allege or claim that any provisions of this Note could give rise to or result in any actual or potential violation of any applicable usury laws.

SECTION 6.5	Remedies Not Waived. No course of dealing between the Borrower and the Lender or any delay in exercising any rights hereunder shall operate as a waiver by the Lender.

## ARTICLE 7

## MISCELLANEOUS

SECTION 7.1	Notice of Certain Events. In the case of the occurrence of any event described in Section 3.3 of this Note, the Borrower shall cause to be mailed to the Lender under this Note at its last address as it appears in the Borrower's security registry, at least twenty (20) days prior to the applicable record, effective or expiration date hereinafter specified (or, if such twenty (20) days' notice is not possible, at the earliest possible date prior to any such record, effective or expiration date), a notice thereof, including, if applicable, a statement of (y) the date on which a record is to be taken for the purpose of such dividend, distribution, issuance or granting of rights, options or warrants, or if a record is not to be taken, the date as of which the holders of record of Class A Units to be entitled to such dividend, distribution, issuance or granting of rights, options or warrants are to be determined or (z) the date on which such reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding-up is expected to become effective, and the date as of which it is expected that holders of record of Class A Units will be entitled to exchange their units for securities, cash or other property deliverable upon such reclassification, consolidation, merger, sale transfer, dissolution, liquidation or winding-up.

SECTION 7.2	Register. The Borrower shall keep at its principal office a register in which the Borrower shall provide for the registration of this Note. Upon any transfer of this Note in accordance with Articles 2 and 4 hereof, the Borrower shall register such transfer on the Note register.

SECTION 7.3     Withholding . To the extent required by applicable law, the Borrower may withhold amounts for or on account of any taxes imposed or levied by or on behalf of any taxing authority in the United States having jurisdiction over the Borrower from any payments made pursuant to this Note.

SECTION 7.4     Transmittal of Notices . Except as may be otherwise provided herein, any notice or other communication or delivery required or permitted hereunder shall be in writing and shall be delivered personally, or sent by telecopier machine or by a nationally recognized overnight courier service, and shall be deemed given when so delivered personally, or by telecopier machine or overnight courier service as follows:

(1)     If to the Borrower, to:

JL Powell LLC
16860 Three Oaks Road
Three Oaks, Michigan 49128
Telephone:   (269) 756-9700
Facsimile:    (269) 756-9766

(2)     If to the Lender, to:

Blue Highways Holdings III, LLC
1111 Mission Ridge Road
Santa Barbara, CA 93103
Telephone:  (805) 560-0800
Facsimile:  (805) 456-2975

Each of the Lender or the Borrower may change the foregoing address by notice given pursuant to this Section 7.4.

SECTION 7.5     Attorneys' Fees.  Should any party hereto employ an attorney for the purpose of enforcing or construing this Note, or any judgment based on this Note, in any legal proceeding whatsoever, including insolvency, bankruptcy, arbitration, declaratory relief or other litigation, the prevailing party shall be entitled to receive from the other party or parties thereto reimbursement for all reasonable attorneys' fees and all reasonable costs, including but not limited to service of process, filing fees, court and court reporter costs, investigative costs, expert witness fees, and the cost of any bonds, whether taxable or not, and that such reimbursement shall be included in any judgment or final order issued in that proceeding. The "prevailing party" means the party determined by the court to most nearly prevail and not necessarily the one in whose favor a judgment is rendered.

SECTION 7.6     Governing Law . This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware (without giving effect to conflicts of laws principles).  Subject to applicable law, the Borrower agrees that final judgment against it in any legal action or proceeding arising out of or relating to this Note shall be conclusive and may be enforced in any other jurisdiction within or outside the United States by suit on the judgment, a certified copy

of which judgment shall be conclusive evidence thereof and the amount of its indebtedness, or by such other means provided by law.

SECTION 7.7   <u>Waiver of Jury Trial</u> . TO THE FULLEST EXTENT PERMITTED BY LAW, EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OTHER DOCUMENT OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND OTHER DOCUMENTS.  EACH PARTY HERETO (I) CERTIFIES THAT NEITHER OF THEIR RESPECTIVE REPRESENTATIVES, AGENTS OR ATTORNEYS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS AND (II) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS NOTE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS HEREIN.

SECTION 7.8   <u>Headings</u> .  The headings of the Articles and Sections of this Note are inserted for convenience only and do not constitute a part of this Note.

SECTION 7.9   <u>Payment Dates</u> .  Whenever any payment hereunder shall be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

SECTION 7.10   <u>Binding Effect</u> .  Each Lender by accepting this Note agrees to be bound by and comply with the terms and provisions of this Note.

SECTION 7.11   <u>No Member Rights</u> .  Except as otherwise provided herein, this Note shall not entitle the Lender to any of the rights of a member of the Borrower, including, without limitation, the right to vote, to receive dividends and other distributions, or to receive any notice of, or to attend, meetings of members or any other proceedings of the Borrower, unless and to the extent converted into Class A Units in accordance with the terms hereof.

SECTION 7.12   <u>Facsimile Execution</u> .  Facsimile execution of this Note shall be deemed original.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the Borrower has caused this Note to be signed by its duly authorized officer as of October 20, 2010.

JL Powell LLC, a Delaware limited liability company

By: _____
Name: Joshua L. Powell
Title: Chief Executive Officer

Exhibit A

Form of Conversion Notice

(To be Executed by the Holder
in order to Convert a Note)

The undersigned hereby elects to convert the aggregate outstanding Principal Amount and Interest Amount (each as defined in the Note) indicated below of this Note into Class A Units (the "Units"), of JL POWELL LLC (the "Company") according to the conditions hereof, as of the date written below. No fee will be charged to the holder for any conversion.

Conversion information:

_____
Date to Effect Conversion:

_____
Aggregate Principal Amount of Note Being Converted:

_____
Aggregate Interest (plus any applicable late charges) Being Converted:

_____
Number of Class A Units to be Issued

_____
Applicable Conversion Price

_____
Signature

_____
Name

_____
Address